UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Tony L. Moore, #275740,<br><br>                Plaintiff,<br><br>v.<br><br>Anthony J. Padula; Ms. Bell; Keith McBride; and L. Greer,<br><br>                Defendants. | ) C/A No. 5:11-1033-TMC-KDW<br>)<br>)<br>)<br>) Report and Recommendation<br>)<br>)<br>)<br>)<br>)<br>) |

      Plaintiff, an inmate with the South Carolina Department of Corrections ("SCDC"), filed this 42 U.S.C. § 1983 action alleging constitutional violations against Defendants regarding his cell block assignments, his transfer to Special Management Unit ("SMU"), and Defendants' failure to protect Plaintiff from assault by another inmate. ECF No. 1. This matter is before the court on the Motion for Summary Judgment filed by Defendants on March 12, 2013. ECF No. 105. As Plaintiff is proceeding pro se, the court entered a *Roseboro*[1] order on March 13, 2013, advising Plaintiff of the importance of such motions and of the need for him to file an adequate response. ECF No. 106. Plaintiff responded to Defendants' Motion for Summary Judgment on April 22, 2013, ECF No. 114, Defendants replied on April 24, 2013, ECF No. 116, and Plaintiff filed a sur-reply on May 17, 2013, ECF No. 118. This case was referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C.[2] Because this motion is dispositive, a Report and Recommendation is entered for the court's review.

---

[1] *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).
[2] On January 2, 2012, the matter was reassigned from United States Magistrate Judge Bruce Howe Hendricks to the undersigned. ECF No. 41.

I.      Procedural and Factual Background

Plaintiff Tony L. Moore ("Plaintiff"), an inmate who was housed at Lee Correctional Institution during the time period relevant to his Complaint, filed this action on May 2, 2011. ECF No. 1 at 2.   Plaintiff specifically contends that in January 2008, while housed in SMU, he filed a grievance concerning Defendant Keith McBride, complaining that McBride was lazy and inadequate.  ECF No. 1 at 4.   Plaintiff argues that McBride learned about Plaintiff's grievance and approached Plaintiff in a "very aggressive and unprofessional manner." *Id.*  Plaintiff avers that McBride threatened Plaintiff and informed Plaintiff that he "was going to pay an inmate to beat [Plaintiff's] teeth out and cut [his] tongue off." *Id.*   Plaintiff states that he wrote an emergency grievance on this matter but it was never resolved. *Id.*

Plaintiff contends that in March 2008 he was released from SMU back to general population and was assigned to Chesterfield Unit. *Id.* Plaintiff alleges that in June 2008 he was moved from Chesterfield Unit to Darlington Unit due to his disciplinary-free behavior. *Id.* Plaintiff contends that on November 2, 2008, he was placed in pre-hearing detention to maintain the integrity of an investigation, and then reassigned to Chesterfield Unit on November 4, 2008, which is a "high alpha disciplinary Unit." ECF No. 1 at 5.  On November 9, 2008, Plaintiff wrote Defendant Bell a "Request to Staff Member" asking why he was moved to Chesterfield Unit.  *Id.* Plaintiff contends that he did not receive a response and thereafter filed a Step One grievance asking why his custody was reclassified and he was reassigned to a more restrictive housing unit when he had not violated any of SCDC's policies or procedures. *Id.*   Plaintiff avers that this grievance was never processed and that on January 7, 2009, he was placed in SMU for unknown reasons.  *Id.*   Plaintiff states that he wrote Defendant Greer asking why he was being held in

2

SMU and Greer responded that Plaintiff was being held in SMU because of threats against Plaintiff. *Id.*[3] Plaintiff contends that Defendants were on notice that his life was in danger and that Defendant McBride could have paid someone to harm Plaintiff. *Id.*

On March 18, 2009, Plaintiff wrote an "Inmate Request to Staff" to SMU manager Bruce Oberman informing him that Plaintiff would go on a hunger strike if not released from SMU by March 25, 2009. ECF No. 1 at 5. Oberman responded that he would clarify Plaintiff's status "very soon" and on March 25, 2009, Plaintiff was released from SMU and assigned to the Chesterfield Unit – the Unit "where Defendant L. Greer's office (Division of Investigations) received the notes from that were making the threats towards the Plaintiff's life." *Id.* On April 7, 2009, Plaintiff was moved from Chesterfield Unit to the Darlington Unit, and on June 11, 2009, Plaintiff was stabbed five times by unknown individuals. ECF No. 1 at 5-6. A South Carolina Law Enforcement Division ("SLED") agent and Defendant Greer interviewed Plaintiff regarding the assault but Plaintiff was unable to identify his assailants. ECF No. 1 at 6.

Plaintiff requests compensatory damages in the amount of $50,000 against each Defendant, jointly and severally; nominal damages in the amount of $5,000 against each Defendant, jointly and severally; punitive damages in the amount of $500,000 against each Defendant; a jury trial; and costs. ECF No. 1 at 11.

II.     Standard of Review

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is

---

[3] Defendant Greer attests that the threats were made against Plaintiff's cellmate, and could have also been aimed toward Plaintiff. *See* Greer Aff. ¶ 7, ECF No. 105-4. Greer also informed Plaintiff that he was being investigated as a possible member of a Security Threat Group. *Id.*

3

appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to

4

preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds by*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248.

Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

   III.   Analysis

      A. Defendants' Motion for Summary Judgment

Defendants contend that Plaintiff's complaints about his housing assignments, his alleged improper placement in SMU, and Defendants' alleged failure to protect Plaintiff from assault from another inmate fail to state a claim under 42 U.S.C. §1983. Defendants attach affidavits from Anthony Padula, Keith McBride, Lloyd Greer, and Margaret Bell in support of their summary judgment motion.

         1. Claims do not Fall Within Scope of 42 U.S.C. § 1983

            a. Plaintiff's Housing Assignments and Confinement in SMU

Plaintiff alleges that Defendant Bell violated his Eighth Amendment and due process rights by moving him from a disciplinary-free housing unit (Darlington) to a more restrictive

5

housing unit (Chesterfield) although Plaintiff was not in violation of the safety and security of SCDC. ECF No. 1 at 7. Plaintiff also asserts that Defendant Padula violated his Eighth and Fourteenth Amendment rights by placing Plaintiff in SMU on January 7, 2009 due to notes that were received by Defendant Greer's office. ECF No. 1 at 7. Plaintiff contends that he was never given an opportunity to sign SCDC 19-67 "Pre-Hearing Detention form," and Defendants failed to follow SCDC's policies and procedures relating to pre-hearing detention and disciplinary matters. ECF No. 1 at 8. Plaintiff contends that Defendant Greer violated Plaintiff's due process rights by not conducting an investigation to determine if Plaintiff met any of the "PHD criteria or to simply see if the notes were real and where they came from." *Id.* Defendants contend that Plaintiff's claims lack merit because Plaintiff was placed in the Chesterfield Unit for appropriate purposes, that Plaintiff does not have a right to remain in any particular cell or unit, and that Plaintiff's placement in SMU did not violate clearly established rights of Plaintiff. ECF No. 105-1 at 8-10.

The Fourth Circuit has specifically stated that "[t]he federal constitution itself vests no liberty interest in inmates retaining or receiving any particular security or custody status." *Slezak v. Evatt*, 21 F.3d 590, 594 (4th Cir. 1994); *see also*, *Posey v. Dewalt*, 86 F. Supp. 2d 565, 571 (E.D. Va. 1999) (stating that "[p]ut simply, petitioner has not stated a viable due process claim because he has no protected liberty interest in a particular classification within [Bureau of Prisons]"). "[A]n inmate's disagreement with [his custodial] classification is insufficient to establish a constitutional violation." *Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995). To show a constitutional violation with respect to a custody classification, Plaintiff must show that

6

the conditions of confinement exceed the sentence imposed or create an atypical or significant hardship in violation of a protected liberty interest. *Sandin v. Conner*, 515 U.S. 472 (1995).

Defendants offer the Affidavit of Margaret Bell, former Associate Warden at Lee Correctional Institute, who attests that in 2008 Plaintiff was moved from Darlington Unit to Chesterfield Unit after he was released from Pre-hearing Detention because it was believed that Plaintiff needed more supervision and structure. ECF No. 105-5 at 2. Ms. Bell avers that Plaintiff was returned to Chesterfield Unit on March 25, 2009, after Plaintiff was released from SMU, and in early April 2009 Plaintiff was moved back to Darlington Unit. *Id.* at 3. Ms. Bell attests that inmates are generally placed in Chesterfield Unit after being released from SMU and depending on their behavior may be moved to the Darlington Unit. *Id.* at 1. Ms. Bell states that, at the time, both Units had similar restrictions and regulations, although Darlington had fewer disciplinary issues. *Id.* Ms. Bell attests that Plaintiff was placed in SMU pending investigation because Ms. Bell had been informed that Plaintiff continued to be involved with contraband and possible assault on other inmates. ECF No. 105-5 at 2. Defendants also had concerns that Plaintiff might be a member of a Security Threat Group and that threats made against Plaintiff's roommate might also be directed to Plaintiff. ECF No. *Id.* at 2-3. Defendants state that after conducting an assessment concerning Plaintiff they did not obtain any additional information, and Plaintiff was returned to Chesterfield Unit approximately March 25, 2009. *Id.* at 3. Responding to this argument, Plaintiff contends that although Defendants contend that Plaintiff was placed in SMU pending investigation, Plaintiff argues that Defendant Greer never conducted an adequate investigation as required by SCDC policy. ECF No. 114 at 1.

7

Plaintiff has failed to present any evidence to show that his classification and resulting conditions of confinement exceed the terms of his sentence or create an atypical or significant hardship. *Hewitt v. Helms*, 459 U.S. 460, 468 (1983) ("[T]he transfer of an inmate to less amenable and more restrictive quarters for non-punitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence."); *Rish v. Johnson*, 131 F.3d 1092, 1096 (4th Cir. 1997) ("Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement."). The undersigned also finds that Plaintiff's claims that Defendants failed to follow SCDC policies do not rise to the level of a constitutional violation. The "Constitution creates no entitlement to . . . any such procedure voluntarily established by the state." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Allegations that Defendants have not followed their own policies or procedures, standing alone, do not amount to constitutional violations. *See Riccio v. County of Fairfax, Virginia*, 907 F.2d 1459, 1469 (4th Cir. 1990) (if state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process issue). Because Plaintiff has not offered evidence that his housing assignment and placement in SMU amounted to a constitutional violation, the undersigned recommends that Defendants be granted summary judgment on these claims.

             b. Failure to Protect

Plaintiff alleges that Defendants Greer, Padula, and Bell violated his Eighth and Fourteenth Amendments rights when they failed to properly investigate threats made against Plaintiff and allowed Plaintiff to be returned to Chesterfield Unit when Defendant Greer had knowledge regarding possible threats against Plaintiff from inmates housed in Chesterfield. ECF

No. 1 at 7-9. Defendants contend that they should be granted summary judgment on this claim because Plaintiff fails to state a claim for failure to protect Plaintiff from other inmates. ECF No. 105-1 at 10.

The Eighth Amendment imposes a duty on prison officials "to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (citation omitted). To establish a claim for failure to protect from violence, an inmate must show: (1) "that he is incarcerated under conditions posing a substantial risk of serious harm," *id.* at 834, and (2) that the prison officials had a "sufficiently culpable state of mind." *Id.* (internal citations and quotations omitted). "In prison-conditions cases that state of mind is one of 'deliberate indifference' to inmate health or safety." *Id.* (internal citations omitted). To be deliberately indifferent, a prison official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety." *Id.* at 837.

Defendants Greer, Padula and Bell offer affidavits in support of their motion for summary judgment on Plaintiff's failure-to-protect claim. ECF Nos. 105-2, 105-4, 105-5. Defendants attest that they were not aware of any specific threat made against Plaintiff. ECF Nos. 105-2 at 2, 105-4 at 2, 105-5 at 3-4. Defendants explain that Plaintiff was placed in SMU for a number of reasons, including that Defendants had become aware of a possible threat against Plaintiff's cellmate. ECF No. 105-5 at 2. Defendants were concerned that the threats could possibly be directed at Plaintiff also, and Plaintiff was placed in SMU. *Id.* at 2-3. Defendants aver that they were not able to determine the validity of the threats or any specific person that made threats against Plaintiff's cellmate. *Id.* at 3. Additionally, Plaintiff did not inform Defendants that he felt threatened or was in danger, nor did Plaintiff ask to be placed in

9

protective custody. *Id.* Defendants further argue that the potential threats against Plaintiff's cellmate arose from inmates in Chesterfield Unit, and Plaintiff was stabbed on June 11, 2009 by an unknown inmate while he was housed in Darlington Unit. *Id.* Here, the record does not establish that that any prison official knew of, and disregarded, an excessive risk to Plaintiff's safety. The unsubstantiated threats made against Plaintiff's cellmate failed to offer a credible indication that Plaintiff was at risk. Furthermore, the record indicates that when Plaintiff was stabbed, he was not housed in the Unit where the threats against Plaintiff's cellmate originated. Accordingly, the undersigned recommends that Defendants be granted summary judgment on this claim.[4]

### c. Unprofessional Treatment by Defendant McBride

Plaintiff contends that Defendant McBride acted in an aggressive manner and threatened Plaintiff with violence which violated Plaintiff's Fourteenth Amendment rights when McBride "step[ped] outside of SCDC agency's policy in an [sic] very unprofessional manner." ECF No. 1 at 7. Defendant McBride offers his own affidavit in support of Defendants' summary judgment motion and attests that he did not make any threats toward Plaintiff. ECF No. 105-3 at 1.

An inmate may assert a constitutional claim when a guard intentionally places the inmate in fear of his life and inflicts "unnecessary suffering which is inconsistent with contemporary standards of decency." *Hudspeth v. Figgins*, 584 F.2d 1345, 1348 (4th Cir. 1978). To establish

---

[4] Plaintiff further contends that Defendant Padula failed to follow SCDC policy and his decision finding that Plaintiff's grievance was moot after Plaintiff "suffered from a murder attempt" shows callous indifference. ECF No. 1 at 8. Defendant Padula's failure to properly respond to or process grievances does not rise to the level of a constitutional violation, and therefore, the undersigned recommends that this claim also be dismissed. *See Riccio*, 907 F.2d at 1469 ("Alleged violations of due process in the deprivation of a protectable interest are to be measured against a federal standard of what process is due . . . . If state law grants more procedural rights than the Constitution would otherwise require, a state's failure to abide by that law is not a federal due process issue.")

such a claim, an inmate may not just allege a threat, but must also allege action consistent with the carrying out of the threat. *Henslee v. Lewis*, 153 Fed. Appx. 178, 180 (4th Cir. 2005) ("Mere threats or verbal abuse by prison officials, without more, do not state a cognizable claim under § 1983."); *see also, Tate v. McClanahan*, No. 2:08–CV–3221–PMD–RSC, 2009 WL 935699, at *2 (D.S.C. Apr. 7, 2009) (finding that "the law is clear that mere threatening language and gestures of a custodial officer do not, even if true, amount to constitutional violations"). Plaintiff has not offered any evidence that Defendant McBride acted to carry out his alleged threats against Plaintiff, other than Plaintiff's unsupported supposition that Defendant McBride could have paid someone to harm Plaintiff because of purported threats that were made against Plaintiff. *See Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 960 (4th Cir. 1996) ("unsubstantiated allegations" are insufficient to defeat summary judgment). The undersigned therefore recommends that this claim be dismissed.

2. Qualified Immunity

Defendants move for summary judgment arguing that even if they violated Plaintiff's constitutional or statutory rights they are entitled to qualified immunity from suit. ECF No. 105-1 at 14-16. Plaintiff contends that Defendants are not entitled to qualified immunity because they violated clearly established constitutional rights when Defendants failed to adequately investigate whether Defendant McBride was a threat to Plaintiff and improperly placed Plaintiff in SMU in violation of SCDC policies. ECF No. 114 at 2.

The Supreme Court in *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982), established the standard that the court is to follow in determining whether a defendant is protected by this immunity. That decision held that government officials performing discretionary functions

11

generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow*, 457 U.S. at 818.

When evaluating a qualified immunity defense, the court must determine (1) whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendants' conduct violated a constitutional right, and (2) whether that right was clearly established at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 230-33 (2009). The two prongs of the qualified immunity analysis may be addressed in whatever order is appropriate given the circumstances of the particular case. *Id.* at 236. In determining whether the right violated was clearly established, the court defines the right "in light of the specific context of the case, not as a broad general proposition." *Parrish v. Cleveland*, 372 F.3d 294, 301-03 (4th Cir. 2004). "If the right was not clearly established in the specific context of the case – that is, if it was not clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted – then the law affords immunity from suit." *Id.* (citations and internal quotation omitted).

Here, the record shows that these Defendants performed the discretionary functions of their respective official duties in an objectively reasonable fashion. They did not transgress any statutory or constitutional rights of Plaintiff of which they were aware in the discretionary exercise of their respective professional judgments. Thus, to the extent the district judge finds that a constitutional violation occurred, the undersigned recommends that Defendants be granted qualified immunity.

3. Official Capacity/ Eleventh Amendment Immunity

Defendants argue that as employees of the SCDC they are not subject to suit in their official capacities. ECF No. 105-1 at 19-20. The undersigned agrees. The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Supreme Court has long held that the Eleventh Amendment also precludes suits against a state by one of its own citizens. *See Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). This immunity extends not only to suits against a state per se, but also to suits against agents and instrumentalities of the state. *Cash v. Granville Cnty. Bd. of Ed.*, 242 F.3d 219, 222 (4th Cir. 2001). Because Defendants are agents or employees of the State of South Carolina, when acting in their official capacities, they are not "persons" within the meaning of 42 U.S.C. § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[N]either a state nor its officials acting in their official capacities are 'persons' under § 1983."). A State cannot, without its consent, be sued in a District Court of the United States by one of its own citizens upon the claim that the case is one that arises under the Constitution and laws of the United States. *Edelman*, 415 U.S. at 663. The State of South Carolina has not consented to be sued in this case. S.C. Code Ann. § 15-78-20(e). As an arm of the State, Defendants are immune from suit under the Eleventh Amendment. Accordingly, the undersigned recommends that Plaintiff's claims against Defendants in their official capacities be dismissed.

### 4. Inadequate Investigation

In response to Defendants' Motion for Summary Judgment, Plaintiff contends that Defendants also violated his constitutional rights when they threw away several confiscated items with blood on them that should have been turned over to SLED to be tested for DNA to determine if the blood was Plaintiff's. ECF No. 114 at 2. Plaintiff contends that Defendants tampered with and destroyed relevant evidence that could have made a difference in the investigation of Plaintiff's June 11, 2009 assault. *Id.* Plaintiff does not explain, however, how he specifically would have benefited from the evidence being tested by SLED. Defendants contend that Plaintiff does not have "a judicially-cognizable interest in the criminal prosecution of another person" and therefore he lacks standing to raise such a claim. ECF No. 116 at 1.

While all evidence must be viewed in the light most favorable to the nonmoving party, a party cannot avoid summary judgment by making unsupported statements of fact. *See Evans,* 80 F.3d at 960. In order to proceed with his § 1983 claim, Plaintiff must set forth specific facts showing that there is a genuine issue for trial. *Celotex Corp.,* 477 U.S. at 323. Plaintiff's bald assertion regarding purported tampering of evidence is not sufficient to create a genuine issue of material fact. The undersigned recommends that summary judgment be granted on this claim.

### 5. Discovery Violations

In his Sur-Reply to Defendants' Motion for Summary Judgment, Plaintiff contends that Defendants' motion should be denied because

> Defendants have violated FRCP Rule 37(b) where they failed to comply with court order. For not obeying a discovery order. The relevant medical records was ordered to be turned over "To Courts Not Plaintiff." There is no record to show where anything of this nature was turn over to the courts.

ECF No. 118 at 1. As an initial matter Plaintiff does not identify the court order he refers to in his argument and the undersigned has reviewed the docket in this case and finds that Defendants were not ordered to produce Plaintiff's medical records to the court. In fact, it was Plaintiff who was ordered to provide the court, by April 24, 2013, with specific requests for medical records that he was seeking in discovery from Defendants. *See* ECF No. 111. Plaintiff did not respond to this court Order. Accordingly, the undersigned finds that Defendants adequately responded to Plaintiff's discovery requests and, therefore, recommends that Defendants' Motion for Summary Judgment should not be denied on this ground.

IV.     Conclusion and Recommendation

Based on the foregoing, it is recommended that the Defendants' Motion for Summary Judgment, ECF No. 105, be granted and that this case be dismissed.

IT IS SO RECOMMENDED.

September 4, 2013                                    Kaymani D. West
Florence, South Carolina                             United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**